FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y
★ AUG 17 2010 ★
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
WADENA PYATT,

                Plaintiff,

-against-

WYCLEF JEAN, JERRY DUPLESSIS,
MICHAEL WILLIAMS, SONY MUSIC
ENTERTAINMENT, INC., COLUMBIA
RECORDS, SONY/ATV TUNES, LLC,
and HUSS ZWINGLI PUBLISHING, INC.,

                Defendants.
--------------------------------------------------------X

ORDER
04-CV-3098 (TCP) (AKT)

PLATT, District Judge:

Currently pending is Defendants' motion for fees and costs under § 505 of the Copyright Act—17 U.S.C.§ 505. For the reasons discussed below, Defendants are awarded $38,095.60 in costs, and $25,000.00 in attorneys' fees, for a total award of $63,095.60.

I. **Background**

This Motion arises out of a civil action that has been twice-decided in Defendants' favor: by unanimous jury verdict; and by affirmation on appeal. The underlying case concerned Plaintiff's allegations that Defendants infringed on her copyright by improperly using major parts of her song.

Trial commenced on September 22, 2008, and lasted almost two weeks. The unanimous defense verdict was returned in less than two hours.

1

Following the defense verdict, on October 17, 2008, Defendants first moved for attorneys' fees and costs against Plaintiff. Plaintiff, however, appealed to the Second Circuit, and that motion was put on hold.

Plaintiff presented multiple arguments on appeal. Nevertheless, the Second Circuit affirmed the defense verdict in full. *Pyatt v. Jean*, 359 F. App'x 182 (2d Cir. 2009). Defendant has now applied again for fees and costs.

The Court presumes the parties' familiarity with the remaining facts.

II. **Awarding Costs and Fees**

The Copyright Act—17 U.S.C. § 505—provides that courts have discretion to allow the recovery of full costs and reasonable attorneys' fees to prevailing parties. Section 505 reads:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505. Defendants seek $99,237.50 in fees, and $38,095.60 in costs, for a total of $137,333.10.

As § 505 states, costs and fees are not mandatory to the prevailing party. Rather, they may be awarded in a court's discretion. *See Earth Flag Ltd. v. Alamo Flag Co.*, 154 F. Supp. 2d 663, 665 (S.D.N.Y. 2001) ("Attorney's fees should be awarded to the prevailing party, not 'as a matter of course,' but 'only as a matter of the court's discretion.' " (*quoting Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533-34, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994))). Section 505 does not differentiate between prevailing plaintiffs and prevailing defendants; both are treated the same for costs-and-fees purposes. *Fogerty*, 510 U.S. at 522-35. This is because, in part, "defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate

them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." *Id.* at 527.

When determining whether costs and fees should be awarded, courts generally consider four non-exclusive factors: (1) frivolousness; (2) motivation; (3) objective unreasonableness (both in the factual and in the legal components of the case); and (4) the need in particular circumstances to advance considerations of compensation and deterrence. *See id.* at 533 n.19; *Boisson v. Banian Ltd.*, 280 F. Supp. 2d 10, 16 (E.D.N.Y. 2003); *Earth Flag*, 154 F. Supp. 2d at 666. But " '[t]here is no precise rule or formula for making these [cost and fee] determinations,' [] instead equitable discretion should be exercised 'in light of the considerations [the Court has] identified.' " *Fogerty*, 510 U.S. at 535 (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 436-37, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)). And of the factors listed above, "objective unreasonableness is accorded substantial weight." *Boisson*, 280 F. Supp. 2d at 16.

Simply because a defendant has prevailed in a copyright action, this does not automatically entitle it to fees and costs. This is because prevailing " 'does not necessarily equate with an objectively unreasonable claim.' " *Berry v. Deutsche Bank Trust Co. Ams.*, 632 F. Supp. 2d 300, 305 (S.D.N.Y. 2009) (*quoting Chivalry Film Prods. v. NBC Universal, Inc.*, No. 05-CV-5627, 2007 WL 4190793, at *2 (S.D.N.Y. Nov. 27, 2007)). Instead, courts "must determine 'if a copyright claim is clearly without merit or otherwise patently devoid of legal or factual basis . . . .' " *Berry*, 632 F. Supp. 2d at 304-05 (*quoting Chivalry Film*, 2007 WL 4190793, at *2). Courts in this circuit have awarded attorneys' fees to prevailing defendants "solely upon a showing that the plaintiff's position was objectively unreasonable, even without a showing of bad faith or frivolousness." *Earth Flag*, 154 F. Supp. 2d at 666 (citing cases). And this circuit's courts "have generally concluded that only those claims that are clearly without

3

merit or otherwise patently devoid of legal or factual basis ought to be deemed objectively unreasonable." *Silberstein v. Fox Entm't Grp., Inc.*, 536 F. Supp. 2d 440, 444 (S.D.N.Y. 2008) (*quoting Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*, No. 96-CV-4126, 2004 WL 728878, at *3 (S.D.N.Y. Apr. 6, 2004)). "That a defendant prevailed in the litigation, however, 'does not necessarily mean that the plaintiff's position was frivolous or objectively unreasonable.' " *TVT Records, Inc. v. Island Def Jam Music Grp.*, 446 F. Supp. 2d 235, 238 (S.D.N.Y. 2006) (*quoting Penguin Books*, 2004 WL 728878, at *2). Nevertheless "[i]n an appropriate case, the presence of other factors might justify an award of fees despite a finding that the nonprevailing party's position was objectively reasonable." *Crown Awards, Inc. v. Discount Trophy & Co.*, 564 F. Supp. 2d 290, 294 (S.D.N.Y. 2008) (*citing Matthew Bender & Co. v. W. Pub. Co.*, 240 F.3d 116, 122 (2d Cir. 2001)), *aff'd*, 326 F. App'x 575 (2d Cir. 2009).

Plaintiff, in opposing Defendants' motion and in arguing that her position was objectively reasonable, relies in large part on the fact that this Court denied Defendants' summary-judgment request, and directed-verdict request,. (*See* Pl.'s Decl. in Opp. ¶ 22, ECF No. 288.) But summary-judgment decisions are not wholly dispositive on the costs-and-fees question. *Cf. Littel v. Twentieth Century-Fox Film Corp.*, No. 89-CV-8526, 1996 WL 18819, at *3 (S.D.N.Y. Jan 18, 1996) ("It is true that a finding that defendants are entitled to summary judgment is not the equivalent of a finding that plaintiff's claims are objectively unreasonable. 'To hold otherwise would establish a per se entitlement to attorneys fees whenever [a summary judgment motion is] resolved against a copyright plaintiff.' " (*quoting CK Company v. Burger King Corp.*, No. 92-CV-1488, 1995 WL 29488, at *1 (S.D.N.Y. Jan. 26, 1995), *aff'd*, 122 F.3d 1055 (2d Cir. 1995)), *aff'd sub nom.*, *DeStefano v. Twentieth Century Fox Film Corp.*, 100 F.3d 943 (2d Cir. 1996).

Here, based on the above-cited precedents, the parties' arguments, the facts of the case, and submitted exhibits, the Court will award Defendants fees and costs. Awarding costs and fees in this case satisfies the Copyright Act's purposes and considerations of compensation and deterrence. Plaintiff's position was both factually and legally unreasonable. During the prosecution of her case, Plaintiff, at times, "misled" the Court, (*see* Sutton Decl. ¶¶ 4-6, 10, ECF No. 146), and made outrageous demands (*see id.* ¶ 12). This unreasonableness determination is further supported by the Court's own observations of Plaintiff's conduct during proceedings. Moreover, the Court's unreasonableness conclusion was implicitly supported by the jury in its incredibly short time taken to return a defense verdict. That the Court denied Defendants' summary judgment and a directed verdict should not be interpreted as an endorsement of Plaintiff's objective reasonableness. Plaintiff prosecuted her case while acting *pro se*. She was, at times, almost irrational. (*See, e.g.*, Weber Aff. ¶¶ 20-22, ECF No. 266, Ex. D; Sutton Decl. ¶¶ 4-6, 10, 12, ECF No. 146.) But due to her *pro-se* status, she was given liberal consideration of her filings, submissions, and in-court arguments—and her borderline case (at best) was allowed to proceed. *See Wallace v. Dawson*, 302 F. App'x 52, 54 (2d Cir. 2008) ("We 'construe[ ] liberally' the pleadings of *pro se* litigants, looking at them 'with a lenient eye, allowing borderline cases to proceed.' " (*citing Phillips v. Girdich*, 408 F.3d 124, 127-28 (2d Cir. 2005))); *Aboulissan v. United States*, No. 03-CV-6214, 2008 WL 413781, at *3 (E.D.N.Y. Feb. 13, 2008) ("A district court must review *pro se* petitions 'with a lenient eye, allowing borderline cases to proceed.' " (citations omitted)). Her status allowed this case to proceed, where if she was represented, it likely would have disappeared earlier. Plaintiff's *pro-se* status, however, does not alter the Court's conclusion that fees and costs should be awarded. *See Chivalry Film Prods. v. NBC Universal, Inc.*, No. 05-CV-5627, 2007 WL 4190793, at *3 (S.D.N.Y. Nov. 27, 2007)

("plaintiff's *pro se* status is not a sufficient basis for denying an award of fees and costs in this case. The Supreme Court in *Fogerty* did not specifically deem the 'relative financial resources of the parties' to be a relevant factor in considering whether to award fees under the Copyright Act."); *Polsby v. St. Martin's Press,* No. 97-CV-0690, 2000 WL 98057, at *3 (S.D.N.Y. Jan. 18, 2000) (awarding costs and fees against *pro se* copyright plaintiff based "on the objective lack of merit in this case, and the apparent need to deter plaintiff's campaign of litigation."). The *Fogerty* factors—and this circuit's courts subsequent cases analyzing those factors—have not included an "ability-to-pay" or *"pro-se"* factor to be considered along with the other four. Furthermore, in the face of an unreasonable suit, defendants should be encouraged to fight and protect their productions. In defending themselves, Defendants spent around $150,000 on the trial alone. (*See* Weber Decl. Ex. A, ECF No. 266.) That is not a trivial sum. And finally, with the subjectivity inherent in music, the Court felt it best for a jury to ultimately decide this case. *See, e.g., McKinley v. Raye,* No. 96-CV-2231, 1998 WL 119540, at *4 (N.D. Tex. 1998) ("Substantial similarity is the most difficult element of copyright infringement to define and apply, *particularly in music copyright actions.*" (emphasis supplied)). And the jury did so decide; in the blink of an eye they returned a defense verdict.

III. **Amount**

Now that the Court has determined that a costs-and-fees award is appropriate, it turns to determining the proper amount. Defendants' attorneys have submitted their bills, which in most instances, provide great specificity in the billed fees and spent costs. They submit that they earned, based on the lodestar method, $112,787.50 in fees.[1] (Weber Decl. Ex. A, ECF No. 266.)

---

[1] Defendants only seek an award based on the costs and fees incurred for the trial itself. They do not seek an award based on the entire litigation. (Defs. Mem. L. Oct. 18, 2008, 7, ECF No. 265.)

Defendants' only seek a fee award of, however, $99,237.50—those fees incurred for the trial. (Defs. Mem. L. Oct. 18, 2008, 18, ECF No. 265.) Additionally, Defendants spent $38,095.60 in out-of-pocket costs, (Weber Decl. Ex. A, ECF No. 266), which they seek reimbursement for in full, (Defs. Mem. L. Oct. 18, 2008, 19, ECF No. 265). Thus, in total, Defendants seek $137,333.10, (*id.*), out of a $153,078.41 bill, (Weber Decl. Ex. A, ECF No. 266). The Court will grant Defendants fees and costs—but at a total less than they seek. Defendants are awarded a total of $63,095.60—$38,095.60 in costs, and $25,000 in fees.[2]

In determining a reasonable fee, the Court must begin with the lodestar method. This method is the "most useful starting point for determining the amount of a reasonable fee [and] is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial [fee] estimate." *Miroglio S.P.A. v. Conway Stores, Inc.*, 629 F. Supp. 2d 307, 312 (S.D.N.Y. 2009) (*quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 186 (2d Cir. 2008)). The Second Circuit in *Arbor Hill* has, however, eschewed the term "lodestar" in favor of the term "presumptively reasonable fee." *Miroglio*, 629 F. Supp. 2d at 312 (*citing Arbor Hill*, 522 F.3d at 183). And to determine a presumptively reasonable fee, "[i]t is well-established that 'any attorney . . . who applies for court-ordered compensation in this Circuit . . . must document the application with contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done.' " *Miroglio*, 629 F. Supp. 2d at

---

[2] The Court notes that Plaintiff has not argued—in the pending filings, or at oral argument—that she would be unable to pay a fees-and-costs award due to financial hardship. If there is a financial hardship, Plaintiff may submit detailed facts, supported by documented evidence, demonstrating an inability to pay. Defendants may oppose this submission, and the Court will consider the provided information and arguments. The Court does note that the *Fogerty* factors do not list *pro-se* status or ability to pay as factors to be considered when awarding fees and costs. *See supra* part II.

312 (*quoting N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)). "The critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" *Miroglio*, 629 F. Supp. 2d at 312 (*quoting Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992), *cert. denied*, 506 U.S. 1053, 113 S. Ct. 978, 122 L. Ed. 2d 132 (1993)).

The Court will award Defendants their costs in full: $38,095.60. As for fees, the Court will award Defendants $25,000. Thus, the total award to Defendants is $63,095.60. The Court has examined Defendants' attorneys' bills and finds them, as a whole, reasonable. Certain hours were, however, redacted, as were certain descriptions, as well as entire lines. (*See, e.g.*, Weber Decl. Ex. A, ECF No. 266.) For example, the Court has no basis to determine whether the $850 billed on September 9, 2008 for a "meeting with [redacted]," or the $2,125 worth of "[redacted] research [redacted]," was reasonable. (*See id.*) Due to these redactions, as well as certain vague entries, such as those described only as "trial preparation," "review correspondence," "telephone conversation" and "review [redacted]," the Court did have some issues properly evaluating the requested fees.[3]

Courts do require specificity in billing entries in order to award fees, and to determine a reasonable award. *Miroglio*, 629 F. Supp. 2d at 313 (specificity is required to allow courts "to determine whether a reasonable amount of time was spent on each activity, and to determine whether the particular activity is compensable."). Where vague billing entries exist, courts commonly reduce fee awards. *Id.* (acknowledging the properness of percentage reductions for vague billing entries); *Margel v. E.G.L. Gem Lab Ltd.*, No. 04-CV-1514, 2009 WL 302069, at *6

---

[3] The Court does note, however, that Defendants have not sought their entire amount of attorneys' fees. So some of these too-redacted entries may be discounted.

(S.D.N.Y. Feb. 6, 2009) ("Where time entries are justified in principle but vague in detail, courts frequently employ a reduction of 20% in order to eliminate waste that may be hidden in the entries."). Furthermore, in addition to vague entries, Defendants at times use "block entries" in their bills. (*See, e.g.*, Weber Decl. Ex. A, ECF No. 266 (September 16, 2008 Entry—JKM: "Research [redacted]; Trial Preparation/Exhibits; Materials for Trial; Telephone Conversation [redacted]," 7 hours, $250 per hour, $1,750 billed; DMW: "Review Correspondence [redacted]; Prepare for Trial; Prepare Exhibits, Scripts, Materials for Trial," 9 hours, $425 per hour, $3,825 billed).) Block entries are billing a large number of hours for multiple tasks. *See Miroglio*, 629 F. Supp. 2d at 313. "Block entries of this kind 'ha[ve] a tendency to obfuscate the amount of time expended on distinct tasks and introduces an element of vagueness into a fee application, making it difficult to determine if the reported hours are "duplicative or unnecessary." ' " *Id.* (*quoting Ass'n of Holocaust Victims for Restitution of Artwork & Masterpieces v. Bank Austria Creditanstalt AG*, No. 04-CV-3600, 2005 WL 3099592, at *5 (S.D.N.Y. Nov. 17, 2005)). And the Court may reduce a fee award for block billing because it reduces the ability to determine activities' reasonableness. *See Berry*, 632 F. Supp. 2d at 306 ("Courts can reduce awards for block billing because 'commingling of activities within one time entry impedes the court's efforts to evaluate the reasonableness of any of the listed activities.' " (*quoting Soler v. G & U, Inc.*, 801 F. Supp. 1056, 1061-62 (S.D.N.Y. 1992))). Because the submitted time records contain vague entries, block entries, and because the time records are also, at times, severely redacted, the Court was unable to determine certain activities' and entries' reasonableness. Thus, the Court will award a lower amount of fees—$25,000—as the practical result of trimming these improper entries from the fee application.

Additionally, the Second Circuit has instructed district courts, in determining an appropriate hourly rate, to:

> bear in mind *all* of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate. The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that reasonable hourly rate to calculate what can properly be termed the "presumptively reasonable fee."

*Arbor Hill*, 522 F.3d at 190 (emphasis in original). The "*Johnson* factors" that the court referred to in *Arbor Hill* are those factors from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 186 n. 3 (*citing Johnson*, 488 F.2d at 717-19). The court in *Arbor Hill* also provided other factors for courts to consider in fashioning a reasonable fee:

> the district court should, in determining what a reasonable, paying client would be willing to pay, consider factors including, but not limited to, the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the

10

resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Arbor Hill*, 522 F.3d at 184. The Court may also rely on its own knowledge of prevailing rates. *See Miroglio*, 629 F. Supp. 2d at 315.

The hourly rates charged by Defendants' attorneys were, depending on the attorney, either $425 or $250 an hour.[4] As can be determined from the provided bills, in light of the redactions, attorney Dorothy M. Weber, a partner, billed a total of 169.25 hours, at a rate of $425 per hour, for a total of $71,931.25. And based on that same bill, attorney Judith A. Meyers billed a total of 88.25 hours, at a rate of $250 per hour, for a total of $22,062.50.[5] In the New York area, these hourly rates are reasonable. *See, e.g., Vargas v. Pfizer, Inc.*, 352 F. Appx. 458, 460 (2d Cir. 2009) (upholding a fee award where the partner's hourly rate was $500 per hour), *aff'g*

---

[4] One attorney, who is listed on the bill only once, had a $500 per hour rate, and another attorney was listed at $275 per hour, with her hours and total amount redacted. (Weber Decl. Ex. A, ECF No. 266, entries for Sept. 26, 2008, and Sept 29, 2008.)

[5] These calculations do not add up to the total charged on Defendants' attorneys' bill due to the fact that certain entries—including attorney, description, hour, and rate—contained redactions. (*See, e.g.*, Weber Decl. Ex. A, ECF No. 266, entries for Sept. 5, 2008; Sept. 8, 2008; Sept. 13, 2008; Sept. 17, 2008; Sept. 18, 2008; Sept 19, 2008; Sept. 23, 2008; Sept. 24, 2008; Sept. 27, 2008; Sept. 29, 2008; and Sept. 30, 2008.) Some of those redacted entries were not included in the Defendants' reimbursement-request calculation. (*Id.* ¶ 16.) According to Defendants' attorneys, Ms. Weber billed 173.5 hours, at $425 per hour, for a total of $73,737.50. (*Id.* ¶ 10.) And Ms. Meyers billed 102 hours of work, at a rate of $250 per hour, for a total of $25,500. (*Id.*) Due to the reasons cited above, the Court is relying on its own calculations, which are based only on entries that allowed the Court to make a time and cost calculation—i.e., entries that had both an hour entry and total amount billed.

11

*Vargas v. Pfizer, Inc.*, No. 04-CV-9772 (S.D.N.Y Aug. 6, 2008)); *Motorola, Inc. v. Abeckaser*, No. 07-CV-3963, 2009 WL 2568529, at *5 (E.D.N.Y. Aug. 5, 2009) ("because intellectual property matters require specialized knowledge, courts in this district have approved higher than average hourly rates for experienced intellectual property attorneys[,]" and awarding partners' rates between $382.50 and $429.25, and associates' rates between $318.75 and $408.); *Microsoft Corp. v. Computer Care Ctr., Inc.*, No. 06-CV-1429, 2008 WL 4179653, at *14 (E.D.N.Y. Sept. 10, 2008) (finding partner rates of $450 and $500 per hour, and associate rates of $385 and $250 per hour to be reasonable for attorneys specializing in intellectual property litigation); *Entral Grp. Intern. v. Sun Sports Bar Inc.*, No. 05-CV-4836, 2007 WL 2891419, at *10 (E.D.N.Y. Sept. 28, 2007) (holding that $560 per hour for a partner, and $360 and $340 per hour for associates were reasonable rates for copyright infringement cases); *BMS Entm't/Heat Music LLC v. Bidges*, No. 04-CV-2584, 2007 WL 1989292, at *2, 4 6 (S.D.N.Y. July 6, 2007) (finding hourly partner rates of $400-$500 per hour, and associate rates of $225 to $300 per hour for experienced copyright litigators to be reasonable). Based in part on these precedents, Defendants' attorneys' hourly rates were reasonable.

IV. **Conclusion**

After considering the above-listed factors from *Johnson* and *Arbor Hill*, the provided bill, Ms. Weber's Affidavit with attached exhibits, Plaintiff's suit itself along with her filings and in-court conduct, and the fee request, the Court deems $25,000 to be a reasonable fee award. Plaintiff's suit was unreasonable—both factually and legally—and borderline, if not totally, frivolous. The Court believes that this amount is sufficient to meet the Copyright Act's dual considerations of compensation and deterrence. Additionally, the Court Grants Defendants' request for an award of $38,095.60 in costs, for a total award of $63.095.60.

SO ORDERED.

_____
Thomas C. Platt, U.S.D.J.

Dated: August 17 2010
       Central Islip, New York